# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAJIN SARIN | : | |
|             Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 17-1492 |
| | : | |
| TROOPER MICHAEL MAGEE, et al., | : | |
|             Defendants. | : | |

McHUGH, J.                                                                                                                                                  January 18, 2018

## MEMORANDUM

This question presented by this case is whether a state court ruling finding a lack of probable cause can have preclusive effect in a later Section 1983 action brought against the arresting officers. Plaintiff Tajin Sarin's case traces back to a traffic stop by two state troopers that led to Sarin's arrest and prosecution for driving under the influence. A state trial judge ultimately found that the troopers lacked probable cause to stop Sarin's car and suppressed all evidence obtained from the stop, with the result that all charges were then withdrawn.

Citing the state court suppression order, Sarin has moved to preclude the troopers from arguing here that their stop of Sarin's car was supported by probable cause. The defendant Troopers broadly argue that such an order cannot have preclusive effect in a later civil rights action, in reliance on *Smith v. Holtz*, 210 F.3d 186, 199 (3d Cir. 2000). Although I reject the Defendants' expansive reading of *Smith,* I conclude that the state court judgment Plaintiff seeks to import did not decide an issue identical to the issue now before me, rendering collateral estoppel inappropriate. For the reasons that follow, Plaintiff's motion will be denied.

1

**I.    Background**

In April 2015, Pennsylvania state troopers Michael Magee and Francis Pawlowski ("Defendants") followed Plaintiff Tajin Sarin's car for a short distance before pulling him over. Trooper Magee asked Sarin to get out of the car, questioned him at length about his activity that night, previous arrests, military service, and reason for leaving the military, and eventually performed several field sobriety tests.  Trooper Pawlowski then administered a breath analysis test, which revealed that Sarin's blood alcohol content was .093 percent, in excess of the legal limit of .08 percent.  Trooper Magee placed him under arrest for driving under the influence. Over the next several months, Sarin remained in detention while the Delaware County District Attorney, acting on behalf of the Commonwealth, charged him with Driving Under the Influence of Alcohol (DUI), and two summary traffic offenses.

In January 2016, when Sarin had already been incarcerated for more than nine months, a state trial judge, the Honorable John Capuzzi, Sr., determined that Defendants had initially stopped Sarin's car without probable cause.  As a result, Judge Capuzzi suppressed "all the physical evidence and statements obtained via the illegal stop." Order 4, Feb. 8, 2016, ECF No. 12 at 25 [hereinafter "State Judgment"].  In a four-page decision, Judge Capuzzi explained that he based his decision on evidence presented at the suppression hearing, including extensive testimony by Trooper Magee, who had initiated the stop, and video footage from Defendants' dashboard camera of the moments leading up to the stop. *Id.* at 3–4.  Trooper Magee testified that he had stopped Plaintiff after observing the car change lanes twice without signaling, in violation of the motor vehicle code. *Id.* at 2.  Judge Capuzzi viewed the video at the hearing, with Trooper Magee indicating the two instances he perceived as violations, but Judge Capuzzi "fail[ed] to see the motor vehicle code violations that led to the ultimate stop of the vehicle." *Id.*

at 3. In his Conclusions of Law, Judge Capuzzi discussed the legal standards for both probable cause and reasonable suspicion, but ultimately based his decision on the conclusion that "there was no probable cause to initiate the stop of [Plaintiff's] vehicle." *Id.* at 3–4. Less than a month after Judge Capuzzi's decision, and shortly before Plaintiff's trial was to begin, the Commonwealth withdrew all charges against Plaintiff via a request for *nolle prosequi*.[1] ECF No. 15-4. Plaintiff was then released after eleven months of imprisonment.[2]

Based on these events, Sarin filed a complaint against the Troopers under Section 1983, alleging that their traffic stop and arrest of Plaintiff violated his Fourth Amendment rights, and asserting related state law claims. Sarin alleges that, "despite the lack of reasonable suspicion to stop [his] vehicle or probable cause to arrest, defendants illegally arrested [him] for DUI." Compl. ¶ 17. Now pending is Plaintiff's Motion for Collateral Estoppel on the Issue of Probable Cause.[3] *See* ECF No. 12 [hereinafter "Pl.'s Mot."]. Sarin asks the Court to apply collateral

---

[1] As set forth below, one of the requirements for application of collateral estoppel is that the prior ruling constitute a final judgment. Defendants insist that "the Commonwealth's voluntary withdrawal of charges against a criminal defendant does not constitute a final judgment on the merits." *See* Defs.' Resp. 8–9. I reject that argument's premise since it is Judge Capuzzi's grant of suppression which must constitute a final judgment on the merits for issue preclusion to apply—not the Commonwealth's subsequent decision to withdraw the charges. There was nothing "to suggest that the state court decision . . . was not adequately deliberate and firm" for purposes of issue preclusion. *See Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 148 (3d Cir. 2007). Moreover, the State Judgment was final in that the Commonwealth had a statutory right to appeal it. *See* Pa.R.C.P. 341(3) (An appeal may be taken by the Commonwealth from any final order in a criminal matter only in the circumstances provided by law); Pa.R.A.P. 311(d) ("In a criminal case . . . the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."); *Com. v. Shearer*, 584 Pa. 134, 140, 882 A.2d 462, 466 (2005) (holding that Rule 311(d) applies in cases like Sarin's, guaranteeing the Commonwealth the right to appeal where "a pretrial ruling results in the suppression . . . of Commonwealth evidence.").

[2] According to Sarin, he was expelled from West Chester University as a result of his arrest, prosecution, and extended incarceration. *See* Compl. ¶ 35, ECF No. 1.

[3] The motion's full title is "Plaintiffs' [sic] Motion for Application of Res Judicata or Collateral Estoppel on the Issue of Probable Cause." However, other than this title and one passing reference to res judicata, the entirety of Plaintiff's argument focuses on collateral estoppel. I therefore assume that Plaintiff's

estoppel— issue preclusion[4]—in light of the State Judgment and to preclude the Troopers from re-litigating whether they had probable cause to stop Sarin's car.[5]

## II.     The Standard for Application of Collateral Estoppel

Plaintiff Sarin's request that I find the earlier state court judgment binding on the parties in this federal case must begin with the Federal Full Faith and Credit Act, 28 U.S.C. § 1738 (1976). *See Dici v. Com. of Pa.*, 91 F.3d 542, 547 (3d Cir. 1996) ("A federal court examining the preclusive effect of a state court judgment must look to the Federal Full Faith and Credit Act."). That law mandates that federal courts, including those deciding § 1983 cases, "give preclusive effect to state-court judgments whenever the courts of [that] state . . . would do so." *Allen v. McCurry,* 449 U.S. 90, 96 (1980); *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993).  Thus, although the application of collateral estoppel is "within the broad discretion of the trial court," I am required to analyze Plaintiff's motion under Pennsylvania's issue preclusion rules. *See Smith v. Holtz*, 210 F.3d 186, 199 (3d Cir. 2000) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).

In Pennsylvania, a party seeking issue preclusion must show that four requirements are met:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action;
> (2) there was a final judgment on the merits;
> (3) the party against whom the plea is asserted was a party or in privity with a

---

occasional use of "res judicata" encompasses the doctrines of claim preclusion (*i.e.*, res judicata) and issue preclusion (*i.e.*, collateral estoppel) alike, and construe Plaintiff's motion as a request for issue preclusion only. *See Allen v. McCurry*, 449 U.S. 90, 94 n.5 (1980) (explaining that "res judicata" is sometimes used to refer to both forms of preclusion).

[4] In this memorandum I use the terms "issue preclusion" and "collateral estoppel" interchangeably.

[5] The Court invited the parties to brief this issue following a Rule 16 Conference in an effort to determine the scope of necessary discovery. *See* Order, Aug. 1, 2017, ECF No. 10.  Aside from seeking issue preclusion, Plaintiff does not request any specific relief.

party to the prior adjudication; and
(4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.[6]

*Greenway*, 475 F.3d at 147 (citing *Shaffer v. Smith*, 543 Pa. 526, 529, 673 A.2d 872, 874 (Pa. 1996)).

In their respective arguments for and against collateral estoppel, Plaintiff and Defendants suggest that a broadly formulated, uniform rule should guide my analysis. Plaintiff Sarin asserts: "[i]t is well-established that a party may not re-litigate the issue of probable cause in a civil action once the issue has been determined in a criminal action." Pl.'s Mot. 6 (citing, *e.g.*, *McCurry*, 449 U.S. at 94). This proposition, Sarin insists, should apply with equal force to both offensive use by plaintiffs who won a favorable judgment in the underlying criminal case, and defensive use by governmental officials who seek to bind a plaintiff to an earlier adverse judgment. *Id.* at 6–7. Defendants assert the opposite. The Troopers contend that a § 1983 plaintiff cannot advance a theory of collateral estoppel to prevent re-litigation of an issue decided in the plaintiff's favor in an underlying criminal proceeding. Defs.' Resp. 6. They cite the Third Circuit's decision in *Smith v. Holtz* for the proposition that "a judgment against the government does not bind its officials in subsequent litigation," urge me to "apply *Smith* and its progeny,"[7]

---

[6] Pennsylvania's Supreme Court has at times described collateral estoppel as requiring a fifth element: that the determination in the prior proceeding was "essential to the judgment." *See City of Pittsburgh v. Zoning Bd. of Adjustment*, 522 Pa. 44, 55, 559 A.2d 896, 901 (1989). This requirement is often subsumed by the first element, requiring identity of issues. Here, because neither party has put forth this five-element test as the controlling standard, and because I find that this additional element would not alter my decision, I apply the four-part test. *See* Defs.' Resp. 5, ECF No. 15; Pl.'s Mot. 3–4.

[7] My research reveals that *Smith* has spawned no binding progeny since its publication more than seventeen years ago. The specific principle for which Defendants cite *Smith* appears in a single sentence in a lengthy footnote. *See* 210 F.3d at 199 n.18. That footnote has been cited in three Third Circuit cases since, none precedential. *See Trueman v. City of Upper Chichester*, 289 F. App'x 529, 538 n.6 (3d Cir. 2008) (*per curiam*) (citing *Smith*'s footnote 18 when denying issue preclusion where the state criminal court's order "[did] not state the basis on which it found that the traffic stop was illegal"); *Murphy v. Bendig*, 232 F. App'x 150, 152 (3d Cir. 2007) (*per curiam*) (citing *Smith*'s footnote 18 without

and ask me to hold that Sarin cannot satisfy the elements of issue preclusion because the Troopers cannot be considered parties or in privity with a party to Sarin's underlying criminal prosecution. *Id.* at 10–12 (citing *Smith*, 210 F.3d at 199 n.18).

Neither approach provides a satisfactory basis for deciding the question. Plaintiff's argument relies mostly on symmetry and fairness—the notion that plaintiffs in § 1983 actions should benefit from collateral estoppel to the same extent as defendants. Pl.'s Mot. 6–7. Although this seems superficially appealing, it fails to account for the fact-specific, multi-part analysis established by the Pennsylvania Supreme Court. Defendants' global argument fails because it relies far too heavily on the Third Circuit's footnote in *Smith*—a case that addressed issue preclusion in a fundamentally different factual context.[8] In *Smith*, a case of some notoriety, a now-infamous high school principal who had been found guilty of three murders brought a § 1983 claim after the Pennsylvania Supreme Court vacated his convictions because of prosecutorial misconduct and barred his retrial on grounds of double jeopardy. 210 F.3d at 188. In the § 1983 case that followed, Smith sought to preclude the defendant state troopers from re-litigating the materiality of certain exculpatory (*Brady*) evidence based on the Pennsylvania Supreme Court's holding in the underlying criminal case. *Id.* at 188, 199 n.18. The district court refused to apply issue preclusion, and the Third Circuit affirmed. I am not convinced, however, that the brief discussion in footnote 18 of *Smith* was intended to announce a general rule prohibiting offensive use of collateral estoppel by a § 1983 plaintiff. Rather, the Court of

---

discussion); *Skunda v. Pennsylvania State Police*, 47 F. App'x 69, 71 (3d Cir. 2002) (citing *Smith* in recognizing an absence of privity).

[8] Admittedly, the Troopers cite two district court cases for the proposition that law enforcement officers cannot be bound in a § 1983 case by the grant of a suppression motion in an earlier criminal case. But these cases, too, trace back to this single footnote in *Smith*. *See* Defs.' Resp. 6, 10–11 (citing, *e.g.*, *Zamichieli v. Andrews*, 12-cv-3200, 2016 WL 8732421, at *6 (E.D. Pa. Apr. 15, 2016); *Jackson v. City of Philadelphia*, 11-cv-4294, 2013 WL 101779, at *1 (E.D. Pa. Jan. 8, 2013) (both relying on *Smith*'s footnote 18, 210 F.3d at 199).

Appeals explicitly considered "several factors" and concluded that the district court had not abused its discretion in declining to apply collateral estoppel in Smith's case. *See id.*

The primary basis for the Third Circuit's decision was that, although the issues in Smith's state case and in his § 1983 case were "tightly tethered," they were not identical. *See id.* at 196. Specifically, the § 1983 case presented the issue of whether a failure to disclose *Brady* material violated his due process right to a fair trial, whereas the state court had "not address[ed] the due process component" of the *Brady* violation at all.[9] *See id.* at 188, 199. Then, in a footnote, the *Smith* Court cited two additional factors showing that the district court had acted within its "broad discretion" when it declined to apply collateral estoppel. *Id.* at 199 n.18 (quoting *Parklane Hosiery*, 439 U.S. at 331). First, the Third Circuit emphasized that the defendant troopers (against whom Smith sought to invoke issue preclusion) were not responsible for the allegedly unconstitutional conduct in the criminal case; it was the prosecutor, not the troopers, who had withheld *Brady* material from the defense. *Id.* at 199 n.18. Second, the state court judgment did not make a finding of culpability specific to the troopers—instead, it "cast blame upon 'the Commonwealth' in general." *See id.* As such, the Third Circuit concluded that the defendant troopers, sued in their individual capacities by Smith, were not in privity with the Commonwealth in his prior criminal prosecution. *Id.* (citing the Tenth Circuit, *Morgan v. Gertz*, 166 F.3d 1307, 1309 (10th Cir.1999), and Wright, Miller & Cooper, Federal Practice and Procedure § 4458 (1981)). But that conclusion was rooted in the specific facts of the case.

Unlike in *Smith*, where the plaintiff sought to bind the defendant troopers to an earlier judgment because of the prosecutor's misconduct, here the allegedly unconstitutional conduct being scrutinized is that of the Troopers themselves. In that regard, whereas the state court

---

[9] As the *Smith* Court further explained, the issues were distinguishable because "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Id.*

judgment in *Smith* did not assign "blame" to the defendant troopers, here the state court ruling specifically addressed the conduct of the Troopers, is based on their own testimony about their conduct, and includes specific findings as to that conduct.[10] Admittedly, the Troopers were not parties or individually represented, and in that sense did not "litigate" the case. But it must be presumed that their testimony under oath would be the truthful regardless of their role in the trial. Indeed, the integrity of our criminal justice system depends upon it. Conceptually, the existence of probable cause does not depend upon an officer's state of mind, and whether probable cause exists—or does not exist—depends upon whether the circumstances objectively support the officer's action. *Devenpeck v. Alford,* 543 U.S. 146, 152–53 (2004). The pertinent evidence to make such an objective assessment—the Troopers' testimony and dash cam video—was all before the state court. Finally, in this action, the Troopers are both represented by, and indemnified by, the Commonwealth.[11]

Thus, contrary to Defendants' contention that *Smith* is "[d]irectly applicable to the case at bar," *see* Defs.' Resp. 11, *Smith* is in fact distinguishable in important ways and, as such, does

---

[10] It should be noted that the state court's ruling focuses primarily on Trooper Magee's actions, rather than those of Trooper Pawlowski. It is not clear from the record before me whether Trooper Pawlowski testified at the suppression hearing, or the exact role he played in the initial stop and arrest, other than administering the breath analysis test. *See generally* State Judgment; Trooper Magee's Test. at Suppress. Hr'g, ECF No. 12 at 12. Regardless, Judge Capuzzi's opinion suggests Trooper Magee's conduct was the focus of the suppression hearing. *See* State Judgment 1–3. Thus, *Smith*'s footnote 18 applies with far greater force as to Trooper Pawlowski. However, because I conclude that issue preclusion is not appropriate here on other grounds, there is no need to parse the varying relevance of *Smith*'s footnote 18 to each of the Defendant Troopers.

[11] A recent, nationwide study found that "police officers are virtually always indemnified" against settlements and judgments in police misconduct cases. *See* Joanna C. Schwartz, *Police Indemnification*, 89 N.Y.U. L. Rev. 885, 894 (2014). Analyzing litigation payment and indemnification data from state and local police departments around the country, including from the Pennsylvania State Police, the researchers found that, from 2006 to 2011, "governments paid approximately 99.98% of the dollars that plaintiffs recovered in lawsuits alleging civil rights violations by law enforcement." *Id.* at 885, 904 n.85. Law enforcement officers contributed to civil rights settlement or judgments in less than half of one percent of cases (.41%) and officers' total contributions amounted to .02 percent of the total payments to plaintiffs. *Id.* at 890, 912–13.

not mandate a mechanical denial of issue preclusion here. Rather, *Smith* counsels that a fact-intensive analysis of the elements of collateral estoppel is required. *See* 210 F.3d at 199 n.18.

## III. Analysis

Because no uniform rule exists in this Circuit in favor of or against Plaintiff's request for issue preclusion, I apply Pennsylvania's four-part test from *Shaffer*, 543 Pa. at 529. To place the analysis in proper perspective first requires a discussion of the controlling legal standard in the underlying criminal case.

Under Pennsylvania law, there are two types of traffic stops, with different standards applicable to each. Judge Capuzzi, citing *Commonwealth v. Salter*, explicitly addressed the two kinds of traffic stops under Pennsylvania law and the different constitutional burdens for each:

> [W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop.

121 A.3d 987, 993 (Pa. Super. 2015). This two-tier standard is codified at 75 Pa.C.S.A. § 6308(b). Judge Capuzzi's conclusion that the stop was illegal because the Troopers lacked probable cause necessarily implies a subsidiary conclusion on his part: that the stop was predicated upon a traffic violation that required no further investigation beyond what the Troopers had already observed, *i.e.* something other than DUI. State Judgment 4, Conclusion of Law No. 7 (holding that the evidence at the suppression hearing did "not support the requisite amount of probable cause needed in order to stop a vehicle for a violation of the vehicle code").

For purposes of issue preclusion, this state law distinction takes on significance because

9

Plaintiff is proceeding under the United States Constitution,[12] and federal law, unlike Pennsylvania law, applies the standard of reasonable suspicion to all traffic stops.[13] There is no doubt that this is the law within the Third Circuit. *United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006) ("Under *Terry* and subsequent cases, an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot . . . [W]e now join our sister circuits in holding that the *Terry* reasonable suspicion standard applies to routine traffic stops.").

Here, the state court decided the issue of probable cause with respect to one variety of traffic violation, whether Sarin violated the vehicle code, but did not decide whether reasonable suspicion existed to stop Sarin's car to investigate a possible DUI—a stop with an unquestionably investigatory mission. On the record before me, this is an issue in dispute. The Troopers' dashboard footage (at minute 3:18) shows that, in the first 30 seconds of the stop, Trooper Magee asked if Sarin was wearing contacts, a question directly relevant to the field sobriety tests Trooper Magee went on to perform. Because the record raises the question of whether the Troopers had reasonable suspicion, but the State Judgment decided only that they lacked probable cause, the issues here and in the state case are not identical. Those issues are certainly "tightly tethered," but under *Smith* that is not enough. *See* 210 F.3d at 196.

---

[12] Plaintiff has not asserted claims under the Pennsylvania Constitution.

[13] The parties agree that reasonable suspicion is the relevant constitutional standard governing Sarin's federal claims. In Sarin's pending Motion, he seems to occasionally use "probable cause" and "reasonable suspicion" interchangeably, *see, e.g.*, Pl.'s Mot. 2, but at his most precise, he clearly states that the Troopers needed reasonable suspicion in order to make a constitutional stop of his vehicle: "Nevertheless, lacking *reasonable suspicion to stop the plaintiff's vehicle* or probable cause to arrest, defendants illegally arrested plaintiff for DUI." *Id.* at 3 (emphasis added); *see also* Compl. ¶ 17 ("Yet despite the lack of reasonable suspicion to stop the plaintiff's vehicle or probable cause to arrest, defendants illegally arrested plaintiff . . ."). The Troopers, too, consistently argue that reasonable suspicion was the controlling constitutional standard in their initial stop of Sarin: "a routine traffic stop is constitutional when it is supported by reasonable suspicion." Defs.' Resp. 7.

Consequently, as to Sarin's constitutional claims, Judge Capuzzi's conclusion that probable cause was absent does not settle the question of whether there was reasonable suspicion.

As to Plaintiff's state law claim for wrongful arrest, that arrest took place after the field sobriety test, which, in the opinion of the Troopers, Sarin failed. The state court made no specific findings as to the adequacy or legitimacy of their assessment, and Sarin subsequently tested above the legal limit. Because the evidence was suppressed as tainted by the unlawful stop, that ruling sheds no light on whether the Troopers had probable cause to arrest based on the test they administered.

Based on my review, an identity of issues is lacking, and therefore Plaintiff's Motion for Application of Res Judicata or Collateral Estoppel must be denied.

    /s/ Gerald Austin McHugh
United States District Judge