IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAJIN SARIN : | | |
| Plaintiff, : | | |
| : | | CIVIL ACTION |
| v. : | | No. 17-1492 |
| : | | |
| TROOPER MICHAEL MAGEE, et al. : | | |
| Defendants. : | | |

McHUGH, J.                                                                                          September 19, 2018

## MEMORANDUM

This is a civil rights action that highlights the interplay between state and federal law following the suppression of evidence in a state criminal prosecution that results in the dismissal of charges. Plaintiff Tajin Sarin was stopped for a minor traffic violation that led to his arrest and prosecution for DUI. After a state judge ruled that the traffic stop was illegal, the Commonwealth withdrew all claims against the driver. Plaintiff has brought this action for unlawful arrest, relying heavily upon the conclusion of the suppression court. I previously held that the state court's order suppressing the evidence did not have a preclusive effect in this case, *Sarin v. Magee,* 284 F. Supp. 3d 736 (E.D. Pa. 2018), and granted leave to conduct discovery. The Defendant State Troopers now seek summary judgment, citing to the Troopers' dashboard camera footage as conclusive evidence that Plaintiff's Fourth Amendment rights were not violated and asserting sovereign immunity as to his claims under state law. Because I am persuaded that no reasonable jury could conclude that Mr. Sarin was stopped without reasonable suspicion or arrested without probable cause, I will grant summary judgment in the Troopers' favor on all claims.

1

I.  **Background**

In April 2015, Pennsylvania state troopers Michael Magee and Francis Pawlowski ("Defendants") followed Plaintiff Tajin Sarin's car for a short distance before pulling him over. The Troopers' dashboard camera captured the moments leading up to the stop and parts of the stop itself.  Trooper Magee later testified that he initiated the traffic stop because Sarin had crossed the white dotted lines into the next lane twice without properly signaling.

Once both cars had pulled to the side of the road, Trooper Magee asked Mr. Sarin several questions, including if he had consumed alcohol; Sarin responded that he had drunk one beer. Magee then asked Sarin to get out of the car and conducted four field sobriety tests.  According to Trooper Magee, Sarin failed three of those tests, smelled of alcohol, and had blood-shot eyes. Magee then administered a preliminary breath test, which revealed that Sarin's blood alcohol content was in excess of the legal limit of .08 percent.  Trooper Magee placed Sarin under arrest for driving under the influence (DUI) and transported him to the local police barracks.  There, Trooper Pawlowski performed a chemical breath test, which showed that Sarin's blood alcohol level was .093 percent.  Based on Trooper Magee's affidavit of probable cause, Sarin was charged with DUI and, because he was on probation for a prior conviction, incarcerated.

In January 2016, a state trial judge held a suppression hearing and determined that the Troopers had initially stopped Sarin's car without probable cause. Order 4, Feb. 8, 2016, ECF No. 22-2 [hereinafter "State Judgment"].  Trooper Magee testified that he twice "observed the vehicle cross the dotted white line into the right lane of traffic without a turn signal." *Id.* at 2; *see also* Suppression Hr'g Tr. 76–77, ECF No. 22-1; Magee Dep. 18:5–23, ECF No. 20-6; Magee Aff. Probable Cause, ECF No. 20-5 (all repeating the same account).  The presiding judge, however, viewed the dash footage at the hearing and "fail[ed] to see the motor vehicle code

2

violations that led to the ultimate stop of the vehicle." State Judgment 3. Ultimately, the state judge concluded that the footage "did not support the requisite amount of probable cause needed in order to stop a vehicle for a violation of the vehicle code." *Id.* at 4. After Sarin's suppression motion was granted, the Commonwealth withdrew all charges against him via a request for *nolle prosequi*. Unfortunately for Mr. Sarin, he had already been incarcerated for nine months.

These events form the basis for Plaintiff's action against the Troopers under § 1983, which alleges that their traffic stop and arrest of Plaintiff violated his Fourth Amendment rights, and his related state law claims for malicious prosecution and false imprisonment. With discovery now complete, Defendants now move for summary judgment.

## II. Standard

The Troopers' Motion is governed by the well-established standard for summary judgment set forth in Rule 56, as amplified by *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## III. Fourth Amendment Claims

In Count I, Plaintiff Sarin asserts overlapping Fourth Amendment claims for "false detention, false arrest, false imprisonment, and malicious prosecution under Section 1983." Compl. ¶¶ 20–25. Since false arrest and false detention are "species" of false imprisonment, those claims are appropriately considered together as false imprisonment. *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007) (explaining that the claims "overlap" because "[e]very confinement of the person is an imprisonment").

To determine whether Mr. Sarin's Fourth Amendment rights were violated in any of the ways he claims, the analysis must begin with the initial traffic stop. A traffic stop is considered a "reasonable"—and therefore constitutional—seizure only when "an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a

3

traffic law at the time of the stop." *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). Plaintiff continues to point to his suppression hearing, where he prevailed because the state judge determined that the dash footage did "not support the requisite amount of probable cause" for the traffic stop. *See* Pl.'s Resp. 8 ("In the present case, the material issue of fact regards the circumstances and articulable facts defendant officers relied upon to stop plaintiff Sarin's vehicle.") (referencing State Judgment 4). But I have previously held, for purposes of this case, the controlling standard is reasonable suspicion, not probable cause. *See* 284 F. Supp. 3d at 742-43.

Here, the relevant traffic law is Pennsylvania's Vehicle Code, which mandates that "no person shall turn a vehicle or move from one traffic lane to another . . . without giving an appropriate signal." 75 Pa. Cons. Stat. § 3334(a). For vehicles traveling at less than 35 miles per hour, "an appropriate signal of intention to turn right or left shall be given continuously" starting "not less than the last 100 feet" before turning. § 3334(a). At higher speeds, drivers must signal 300 feet before changing lanes. *Id.*

In this case, the Troopers' dash camera footage provides an objective factual record on which to judge the constitutionality of the traffic stop. I have independently viewed that footage several times. It shows that Sarin changed lanes with a late signal, activating his right turn signal just as the right tires crossed the white dotted line. *See* Dash Footage at 0:42, ECF 20-7. The Pennsylvania Vehicle Code imposes different requirements for signaling at different speeds. The record here does not establish Sarin's speed, but that is of no significance because even assuming that the lowest speed category addressed by the statute applies—less than 35 miles per hour— Mr. Sarin would have been obligated to signal 100 feet before changing lanes. Because the video indisputably shows that he did not signal until he was in the process of changing lanes,

there was objective evidence of a violation, and therefore, by definition, reasonable suspicion to stop him for that violation.

For constitutional purposes, it does not matter whether he changed lanes without properly signaling only once, or, as Trooper Magee testified, twice. Nor would it matter, for purposes of a Fourth Amendment analysis, if the Troopers' true motivation for the stop were something other than Sarin's lane change violation. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (holding that the reasonableness of traffic stops does not depend on the "actual motivations" of the officers involved). What matters is that the footage shows that he committed a traffic violation—albeit a minor one. It appears that the relevant law—requiring drivers to signal 100 feet before changing lanes—was not argued before the suppression hearing judge,[1] but the controlling law has been appropriately and cogently presented here.[2]

The next question is whether, during the traffic stop, Trooper Magee developed the probable cause needed to arrest Sarin for DUI. Probable cause to arrest exists when "reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested," based on the law of the state where the arrest occurred. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citations omitted). In Pennsylvania, it is against the law to operate a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving," quantified as a blood alcohol level of .08 percent or higher. 75 Pa. Cons. Stat. § 3802(a). Here, Trooper Magee testified that Sarin, who had admitted

---

[1] *See generally* State Judgment; Suppression Hr'g Tr.

[2] Although the federal "reasonable suspicion" standard controls here, I note that the objective evidence of Sarin's violation would also satisfy Pennsylvania's stricter standard, requiring officers to have probable cause when it is "not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred." *Com. v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015).

5

to having a single drink earlier that night, had blood-shot eyes, smelled of alcohol, and failed the field sobriety tests. Sarin has not contested that testimony or brought forth contrary evidence, and so I accept those facts as not in dispute under Rule 56(e). Magee then administered a preliminary breath test, which indicated that Sarin's blood alcohol content was above the legal limit. As Defendants correctly note, "[t]he sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest." *See* 75 Pa. Cons. Stat. § 1547. I conclude that Trooper Magee's observations, coupled with Sarin's positive breath test, provided an objective basis for a reasonable officer to conclude that Sarin had violated the state's DUI law, and probable cause therefore supported his arrest.

For Sarin to prevail on his Fourth Amendment § 1983 claims for false imprisonment or malicious prosecution, he would have to show at trial that the Troopers lacked probable cause to arrest him. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (requiring § 1983 plaintiff to demonstrate a lack of probable cause to prove false arrest claim); *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (requiring § 1983 plaintiff bringing malicious prosecution claim to show that "the proceeding was initiated without probable cause"). But the record shows that the Troopers had the requisite reasonable suspicion to stop Sarin initially and then developed probable cause to arrest him for DUI. I must therefore grant summary judgment in Defendants' favor as to each of Sarin's Fourth Amendment claims.

## IV. State Claims and Sovereign Immunity

As to Sarin's state law claims for malicious prosecution[3] and intentional infliction of emotional distress (IIED), the Troopers assert that they are shielded by sovereign immunity and,

---

[3] Plaintiff's Count II purports to bring a claim for malicious prosecution under both state law and § 1983. Because § 1983 "is not itself a source of substantive rights," *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979), I consider the § 1983 component of Count II of the Complaint to be duplicative of Sarin's Fourth Amendment claim for malicious prosecution set forth in Count I.

alternatively, that the claims must fail on the merits. Although the concepts of Eleventh Amendment immunity and sovereign immunity are sometimes treated as interchangeable, in fact sovereign immunity applies more broadly. *Lombardo v. Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 195 (3d Cir. 2008). The scope of sovereign immunity is controlled by state law. *Id.* In Pennsylvania, the legislature has codified protection conferred by Article I, Section 11 of the Pennsylvania Constitution, with the result that the Commonwealth itself and its "officials and employees acting within the scope of their duties" enjoy sovereign immunity, 1 Pa. Cons. Stat. § 2310, unless the legislature has otherwise waived that immunity. Thus, for practical purposes under Pennsylvania law, there are two ways to overcome sovereign immunity. First, the legislature has waived sovereign immunity by statute in nine specific areas. 42 Pa. Cons. Stat. § 8522(b) (listing the nine exceptions to sovereign immunity). Second, sovereign immunity does not protect Commonwealth employees acting outside the course and scope of their employment.

Plaintiffs' claims here do not fall within any of the nine statutory exceptions to immunity. The question then becomes whether they were acting within the scope of their employment when they engaged in the conduct at issue: the traffic stop, the arrest, and Trooper Magee's testimony at the suppression hearing. Whether a state official acted within the scope of employment is a question of state law, and Pennsylvania has adopted the definition from the Restatement (Second) of Agency (1958). *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (citing *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. 1989)). Section 228 of the Restatement provides that a person's conduct is within the scope of employment if and only if: "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master."[4]

I note at the outset that Plaintiff made very few initial allegations relevant to Trooper

---
[4] The fourth and final element, related to use of force, is not relevant here. *Id.*

7

Pawlowski and now, at the summary judgment stage, makes no effort to explain why Pawlowski should not be entitled to sovereign immunity. *See* Pl.'s Resp. 5 (asserting, with no elaboration or support, that "Pawlowski's actions are not protected by the Sovereign Immunity doctrine"). In my own analysis of the record under Rule 56(c)(3), I have identified no basis upon which to deny sovereign immunity to Trooper Pawlowski. As Defendants aptly point out, *see* Defs.' Reply 4, ECF No. 23, Plaintiff complains of no particular conduct by Pawlowski and there is no evidence at all to suggest that he was operating outside the scope of his employment during the traffic stop or in Sarin's prosecution. Pawlowski merely drove the patrol car and later, after Sarin had failed the preliminary roadside breath test, Pawlowski administered the chemical breath test back at the police barracks—all conduct that he is employed to perform and that undoubtedly serves the interests of the public. Accordingly, I hold that Trooper Pawlowski may properly assert sovereign immunity as to Sarin's state claims.

As for Trooper Magee's ability to assert sovereign immunity, the heart of Sarin's argument is that Magee's account of the incident—that Sarin crossed the dotted white line twice without signaling—was not only false, but intentionally fabricated. Sarin argues that Trooper Magee stopped him without the probable cause required by Pennsylvania law for a traffic stop, *see Com. v. Salter*, 121 A.3d at 993, provided a false account on Magee's police report and affidavit of probable cause, and repeated that false account under oath at his deposition and at the suppression hearing. Plaintiff argues that "[p]remising a vehicle stop on false information and then lying, under oath, to validate an illegal arrest and prosecution is not conduct that falls within [a state trooper's] scope of employment." Pl.'s Resp. 5.

Trooper Magee maintains that the Plaintiff crossed the dotted lines twice, and that the dash footage somehow failed to capture the first crossing. Magee Dep. 18:5–23. I agree with

8

Plaintiff that part of the Trooper's testimony is inconsistent with the video; but I do not see that discrepancy as dispositive. If, as Sarin claims, there were evidence that Trooper Magee lied completely, either to the prosecutor or under oath, then sovereign immunity would be unavailable.[5] But the record does not support Plaintiff's theory. It is true that the dash footage shows Sarin change lanes once—and only once—with a late signal. And Trooper Magee, despite viewing the footage, and fully cognizant that all of the other participants in the proceeding reviewed the same footage, continued adamantly to insist that Sarin crossed the dotted line twice without signaling properly. But whether Magee felt compelled to defend his own memory despite the video evidence, or was just being stubborn, the difference between one or two violations was immaterial. More importantly, even if the jury were to take the most unfavorable view of Magee's testimony and conclude that his testimony was knowingly false, thereby removing the shield of immunity, Sarin's state claims would nevertheless fail on the merits.

To succeed on his IIED claim under Pennsylvania law, Mr. Sarin would need to show that Trooper Magee's conduct was (1) extreme and outrageous, (2) intentional or reckless, (3) caused emotional distress, and (4) that the distress was severe. *See Doughty v. Wells Fargo Bank, N.A.*, 2018 WL 1784159, at *3 (E.D. Pa. 2018) (citing *Hoy v. Angelone*, 691 A.2d 476, 482, *as*

---

[5] Defendants urge me to adopt the analysis of the Commonwealth Court in *Justice v. Lombardo*, 173 A.3d 1230, 1239 & n.10 (Pa. Commw. Ct. 2017), *appeal granted*, 187 A.3d 206 (Pa. 2018). There, a three-judge panel applied Sections 229 and 231 of the Restatement, which provide that conduct may be "within the scope of employment even though it is unauthorized or "consciously criminal or tortious." 173 A.3d at 1238–39. I decline to adopt such an expansive understanding of "scope of employment" without a clear indication from the state's high court, as perjured testimony is not what state troopers are employed to provide. To the contrary, perjury would be completely inconsistent with the legitimate interests of the Pennsylvania State Police and the Commonwealth. *Accord, Lockhoff v. Slonaker,* 2017 WL 2423790, at *16 (E.D. Pa. 2017): "Because knowingly submitting false allegations to a prosecutor would not serve the interests of the Pennsylvania State Police or be otherwise justified by a legitimate penological purpose, such activity falls outside a Trooper's scope of employment, and so sovereign immunity is unavailable."

*modified*, 691 A.2d 485 (Pa. Super. 1997), *and aff'd*, 554 Pa. 134, 720 A.2d 745 (1998)). In *Hoy,* 554 Pa. at 150, 720 A.2d at 753, the Pennsylvania Supreme Court emphasized that the level of outrageousness required to support a claim is extraordinarily high:

> [O]ur Superior Court has noted, "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987). Described another way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, comment d; *Daughen v. Fox*, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988).

Furthermore, to show that distress is severe, Pennsylvania courts require some physical manifestation of injury. *Doughty*, 2018 WL 1784159 at 3 (citing *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. 1994), *aff'd*, 544 Pa. 315, 676 A.2d 222 (1996)).[6] The most the jury could find would be that Trooper Magee intentionally exaggerated the number of times Sarin crossed the dotted line (twice instead of once), which would not rise to the level of outrageousness required to state a claim, and there is no evidence of profound distress.

Mr. Sarin's state claim for malicious prosecution likewise fails because, like its Fourth Amendment counterpart, it requires that "the proceeding was initiated without probable cause." *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000). As explained in the Fourth Amendment discussion above, Trooper Magee had probable cause to support Sarin's arrest for DUI because the video definitively establishes a violation of the Vehicle Code sufficient to render the stop lawful. Summary judgment is therefore granted in Trooper Magee's

---

[6] Although the Third Circuit has predicted that the Pennsylvania Supreme Court will ultimately recognize such a theory, *Pavlik v. Lane Ltd. Tobacco Exps. Int'l*, 135 F.3d 876, 890 (3d Cir. 1998), the Supreme Court has yet to find a case that qualifies. *See Kelly v. Jones,* 148 F. Supp. 3d 395, 405 n.2 (E.D. Pa. 2015) (describing intentional infliction as a "hypothetical tort" in light of the Pennsylvania Supreme Court's continued failure to recognize facts sufficient to state a claim).

favor on both state claims. *See* Pl.'s Resp. 9 (admitting that the "answer to the probable cause question" will dispose of Sarin's § 1983 and state claims alike).

**V. Conclusion**

There is clear evidence in this case that the Troopers observed Mr. Sarin commit a traffic violation. Although that violation was admittedly minor, it nevertheless gave the Troopers the reasonable suspicion required by the Fourth Amendment to conduct a traffic stop. Once stopped, Trooper Magee developed probable cause to arrest Sarin for DUI. Such is the record in this case, notwithstanding the suppression of the evidence in state court. Accordingly, summary judgment is granted in favor of Defendants on all claims.

     /s/ Gerald Austin McHugh
United States District Judge